225 So.2d 157 (1969)
Linston BROWN, as Administrator of the Estate of Michael Brown, Plaintiff-Appellee,
v.
CITY OF ALEXANDRIA, Defendant-Appellant.
No. 2746.
Court of Appeal of Louisiana, Third Circuit.
June 27, 1969.
Rehearing Granted and Denied August 7, 1969.
Gist, Methvin & Trimble, H. B. Gist, Jr., Alexandria, for defendant-appellant.
Garrett, Ryland & Downs, by Donald M. Garrett, Mike Wahlder, Alexandria, for plaintiff-appellee.
Before FRUGE, HOOD and MILLER, JJ.
Rehearing Granted as to Plaintiff-Appellee and Denied as to Defendant-Appellant, August 7, 1969.
MILLER, Judge.
Mr. Linston Brown seeks to recover medical and hospital expenses, and (in his capacity as natural tutor) to recover damages for injuries sustained by his 9-year old son Michael. Michael was bitten by a chimpanzee housed in the Alexandria City zoo. The trial court awarded to Mr. Brown $943.50, the stipulated amount of special damages, and in his capacity as natural tutor of his minor child $17,500 for pain, suffering and disability of Michael. The City of Alexandria appealed and plaintiff answered the appeal seeking an increase in the award.
*158 The trial court based its opinion primarily on LSA-C.C. Article 2321, finding that this creates strict and absolute liability upon the owner and keeper of wild animals. It was also held that recovery was based on the City's negligence.
Appellant contends that both grounds for this holding are erroneous. Alternatively, the City contends that both Mr. Brown and his 9-year old son were guilty of contributory negligence and/or they assumed the risk in the premises. Alternatively, the City seeks to have the award reduced.
At about 2:30 p. m. on September 24, 1966, Mr. Brown brought his 15 year old son, his 13 year old daughter and Michael, age 9, to the Park so that they could play ball while he went to a nearby store to shop for groceries. Michael and his sister stopped at the zoo. Later Michael went across the street to buy some candy. On his return he decided to feed the chimpanzee, Old Schofield.
Old Schofield was housed in a cage which had been constructed to house a lion. The square cage was constructed on three sides with vertical round bars spaced about 3 to 4 inches apart. The chimpanzee had no difficulty extending his arms through the bars where the bars were not covered by the mesh wiring, commonly referred to as cyclone fencing.
In about April of 1966, the City purchased the chimpanzee from an animal dealer in Houston. The young chimpanzee was described as about 4 feet tall with arms approximately 3 feet long. He weighed about 125 to 140 pounds and "* * * seemed tame enough, for a wild animal * * *" at the time he was purchased. He was "teased" quite a bit by the public and would get angry. On one occasion his hand was burned, on another his bed was burned and on still another he was found to be drunk. It was assumed that beer had been handed to Old Schofield through the bars in front of his cage, and shortly thereafter a mesh wiring was placed to cover the entire front of the cage. However, the mesh wiring placed on the sides only covered these sides to a height estimated by one witness as about two and one-half feet high; by another at 3 feet high, and measured by a third witness to be 41 inches above the ground level outside the cage. Photographs in evidence show that the floor of the cage is a few inches higher than ground level.
About three months before this incident Old Schofield bit off a portion of the thumb of one employee while the employee was feeding the animal.
The public is restrained from getting too close to the cage by a cyclone fence approximately three and one-half feet high. Where this fence parallels the front of the cage, it is located six and one-half feet in front of Old Schofield's cage.
From time to time, signs reading "Do Not Cross Over Wire" and "Do Not Feed Animals" have been displayed at different places in the zoo. Vandals regularly removed these signs. It was well established that there were no such signs displayed September 24, 1966, and that there is a standing order for these signs at a local signpainter's shop. The City employees failed to have these signs posted on this date.
Master Brown decided that he wanted to feed some of his candy to Old Schofield and had no difficulty climbing the fence. He went to the side of the cage but dropped the candy outside the cage. When Michael reached down to pick up the candy for the animal, Old Schofield apparently misunderstood this benevolent overture for one of food competition and reached outside the cage to grab the boy's right hand, pulled it into the cage and either bit or pulled off the right ring finger and inflicted serious injury to the boy's right upper extremity.
According to Michael, Old Schofield let him go when an unidentified lady came running up to help.
*159 Pretermitting the issue of whether to apply the doctrine of strict liability to municipalities maintaining wild animals in a City Zoo, we find that the City was negligent.
The City was aware of the fact that this animal was housed in a cage constructed for a lion; that the animal had a few weeks before bitten off the thumb of an employee while the employee was feeding the animal; that Old Schofield was mistreated from time to time and on those occasions would get excited and enraged; that young people, as well as teenagers and older people, frequently climbed the protective fence and would go to the cages; that the public frequently fed Old Schofield, and on one occasion gave him a substantial quantity of beer and/or some other intoxicant; and that on the sides of his cage and above the wire mesh, Old Schofield could reach outside his cage for a distance of at least two and one-half feet, and possibly a distance of three feet.
In addition to these findings we find from the pictures in evidence that Old Schofield looks as does any chimpanzee just like Cheetah, the animal that appears with Tarzan. He does have the appearance of a friendly animal. This is an animal that young people see on various children's TV shows where the chimpanzee is portrayed as a friendly playmate.
The City was negligent in failing to provide wire mesh on the sides of the cage just as was provided in front of the cage; or alternatively in failing to provide a fence which would effectively restrain the public from going to the cage.
Mr. Brown was not negligent in leaving his 9 year old son with his older sister and brother at a park where they could play ball and visit the zoo. Although the father had brought his child to the zoo before there is nothing to show that the father knew that the lion was no longer occupying the lion's cage and that the cage was now housing a friendly looking but dangerous chimpanzee. There is no showing that the father had knowledge of this potentially dangerous situation.
Although Michael was of sufficient age to be barred from recovery by the doctrine of contributory negligence, Lynch v. Knoop, 118 La. 611, 43 So. 252, 8 L.R.A., N.S., 480 (1907), we find the trial court correctly held that this 9 year old boy did what could be expected of any 9 year old boy who could easily climb the fence to go to the cage to feed the chimpanzee.
We find no merit to appellant's argument that either Mr. Brown or Michael assumed the risk, and are therefore barred from recovery.
The award to Michael's father of $17,500 for Michael's pain, suffering and disability appears to us to be excessive.
Michael's injuries were described as an open fracture-dislocation of the right elbow with the radial head protruding through the wound. The ring finger of the right hand had been avulsed with the stump of the proximal phalanx exposed. Michael was admitted to the hospital on September 24, 1966 and amputation of the ring finger was completed. A pin was inserted in the right elbow and the joint was casted. He was discharged from the hospital October 5, 1966 and the pin was removed on November 30, 1966. On two occasions, abscesses were drained, but on the whole his recovery has been excellent.
Dr. Cedric W. Lowery, orthopedic surgeon of Alexandria was the treating physician and found that the injuries left Michael with a 15 limitation of extension of his right arm which he considered to be not quite a 10 per cent disability of the right arm. Rotation movements are within normal limits. In summarizing the permanent disability, Dr. Lowery testified (Tr. 153) "On the elbow I would say probably around 15 per cent of the extremity as a whole and then with the finger missing I would add *160 approximately 5 per cent, or being in the realm of around 20 per cent." This appraisal included the possibility of growth disturbance and any other complications that might result.
While on direct examination, Mr. Brown was questioned concerning how this incident affected his son (Tr. 139).
"Q. Mr. Brown what type of child was your son Michael prior to the time that this accident occurred?
A. Well he was kind of rough, I mean, I don't know he was just like any other boy I guess.
Q. Did he participate in sports?
A. Well football, he liked football.
Q. Do you notice any change in him since the accident?
A. Well in ways I have.
Q. Would you describe these ways?
A. Well he just acts like he knows better, in his school and he just acts like he's a little more grown up than he was then, he has just changed a lot.
Q. Does he play football any more?
A. Yes, sir, any kind of ball game, he likes ball.
Q. Has that affected him any, his injury?
A. No, sir."
In another part of his testimony, Mr. Brown described his son's crying as a result of other boys picking on him "for going and sticking his hand in the monkey's mouth and they will kid him about being four fingered and all that kind of stuff." There was no suggestion that this was a continuing problem, and Michael's parents were told to meet this problem by paying no attention to it and forgetting it. This has apparently resulted in a satisfactory adjustment.
On direct examination concerning his injuries, Michael testified (Tr. 104):
"Q. Mike what happened to your arm after the animal bit youhow is it now?
A. It's fixed up.
Q. How about your hand?
A. It's good.
Q. You are O. K. now?
A. Yes sir.
Q. Did you play ball and other sports before you got hurt?
A. Yes, sir.
Q. Do you play ball now?
A. Yes, sir."
Dr. Lowery, the treating physician, testified under cross examination, that Michael can run and play as ordinary children can and that he would not restrict Michael from participating in sports.
A proper award for the pain, suffering and disability suffered by Michael Brown is $10,000.00.
For these reasons, the judgment of the trial court is amended to reduce the award to Lindston Brown in his capacity as natural tutor for Michael Brown, and against the City of Alexandria to the sum of Ten Thousand and No/100 ($10,000.00) Dollars with legal interest thereon from October 25, 1966, until said judgment is satisfied. In all other details the judgment is affirmed. All costs of this appeal are to be paid by defendant-appellant.
Amended and affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.
HOOD, J., is of the opinion that a rehearing should be granted, being of the opinion that the plaintiff is bound from recovery by contributory negligence.